JUDGE SULLIVAN

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

09 CV 1934

| | |
|---|---|
| ERMELINDA RODRIQUEZ, On Behalf of Herself And All Others Similarly Situated, | **Civil Action:** |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| WELLS FARGO & COMPANY, JOHN S. CHEN, LLOYD H. DEAN, SUSAN E. ENGEL, ENRIQUE HERNANDEZ, ROBERT L. JOSS, RICHARD M. KOVACEVICH, RICHARD D. MCCORMICK, CYNTHIA H. MILLIGAN, NICHOLAS G. MOORE, PHILIP J. QUIGLEY, DONALD B. RICE, JUDITH M. RUNSTAD, STEPHEN W. SANGER, JOHN G. STUMPF, SUSAN G. SWENSON, MICHAEL W. WRIGHT, RETIREMENT COMMITTEE OF THE WELLS FARGO FINANCIAL THRIFT AND PROFIT SHARING PLAN, PETER S. DELANOIT, WELLS FARGO FINANCIAL COMPENSATION COMMITTEE, and JOHN DOES 1-20, |  |
| Defendants. | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

Plaintiff, a participant in the Wells Fargo Financial Thrift and Profit Sharing Plan (the "Plan")[1], covering substantially all employees of Wells Fargo & Company and its subsidiaries (collectively "Wells Fargo" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action on behalf of the Plan and all participants and beneficiaries in the Plan (the "Participants") to recover losses to the Plan for which the fiduciaries of the Plan are liable pursuant to Sections 409 and 502(a)(2) of the Employee

---

[1]     The action is also brought on behalf of the participants in the Wells Fargo & Company Supplemental 401(k) Plan.

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109 and 1132(a)(2).  In addition, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, a constructive trust, restitution, equitable tracing, and other monetary relief.

2.     From October 3, 2008 through the present (the "Class Period"), the Plan acquired and held shares of Wells Fargo common stock ("Wells Fargo Stock" or "Company Stock"), which was offered as one of the retirement saving options in the Participant Contribution Component of the Plan.

3.     Defendants, each having certain responsibilities regarding the management and investment of the Plan's assets, breached their fiduciary duties to the Plan and Participants by failing to prudently and loyally manage the Plan's investment in Company Stock by, among other things, (i) continuing to offer Company Stock as a retirement saving option; (ii) continuing to acquire and hold shares of Company Stock in the Plan when it was imprudent to do so; (iii) failing to provide complete and accurate information to Participants regarding the Company's financial condition and the prudence of investing in Company Stock; and (iv) maintaining the Plan's pre-existing investment in Company Stock when it was no longer a prudent investment for the Plan.

4.     As a result of Defendants' fiduciary breaches, as alleged herein, the Plan has suffered substantial losses, resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plan's Participants.   Under ERISA, the breaching fiduciaries are obligated to restore to the Plan the losses resulting from their fiduciary breaches.

5.    Because Plaintiff's claims apply to the Participants as a whole, and because ERISA authorizes Participants such as Plaintiff to sue for plan-wide relief for breach of fiduciary duty, Plaintiff brings this as a class action on behalf of all Participants of the Plan during the Class Period. Plaintiff also brings this action as a Participant seeking plan-wide relief for breach of fiduciary duty on behalf of the Plan.

6.    In addition, because the information and documents on which Plaintiff's claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief. At such time as Plaintiff has had the opportunity to conduct additional discovery, Plaintiff will, to the extent necessary and appropriate, amend the Complaint or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## JURISDICTION AND VENUE

7.    *Subject Matter Jurisdiction.* This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l). In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

8.    *Personal Jurisdiction.* ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of Defendants are residents of the United States, and this Court therefore has personal jurisdiction over them. This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in this District.

9.     *Venue.*   Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

### Plaintiff

10.     *Plaintiff Ermelinda Rodriquez* is a resident of Corona, California.   Plaintiff is a former Wells Fargo employee and is a participant in the Plan.

### Defendants

11.     *Defendant Wells Fargo* is diversified financial services company.   The Company provides retail, commercial and corporate banking services through banking stores located in 23 states:  Alaska, Arizona, California, Colorado, Idaho, Illinois, Indiana, Iowa, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, South Dakota, Texas, Utah, Washington, Wisconsin and Wyoming.   The Company also provides other financial services through subsidiaries engaged in various businesses, principally:  wholesale banking, mortgage banking, consumer finance, equipment leasing, agricultural finance, commercial finance, securities brokerage and investment banking, insurance agency and brokerage services, computer and data processing services, trust services, investment advisory services, mortgage-backed securities servicing and venture capital investment.

12.     Throughout the Class Period, Wells Fargo's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or

to whom it assigned fiduciary responsibility. Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plan or management and disposition of the Plan's assets.

13.    **_Defendant John S. Chen ("Chen")_** was, at all relevant times, a director of the Company. During the Class Period, defendant Chen was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

14.    **_Defendant Lloyd H. Dean ("Dean")_** was, at all relevant times, a director of the Company. During the Class Period, defendant Dean was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

15.    **_Defendant Susan E. Engel ("Engel")_** was, at all relevant times, a director of the Company. During the Class Period, defendant Engel was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

16.    **_Defendant Enrique Hernandez ("Hernandez")_** was, at all relevant times, a director of the Company. During the Class Period, defendant Hernandez was a fiduciary within

the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

17.    ***Defendant Robert L. Joss ("Joss")*** was, at all relevant times, a director of the Company.   During the Class Period, defendant Joss was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

18.    ***Defendant Richard M. Kovacevich ("Kovacevich")*** was, at all relevant times, a Chairman of the Board of Directors of the Company.   Defendant Kovacevich also served as the Company's Chief Executive Officer from November 1998 to June 2007 and as President from November 1998 to August 2005.   During the Class Period, defendant Kovacevich was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

19.    ***Defendant Richard D. McCormick ("McCormick")*** was, at all relevant times, a director of the Company.   During the Class Period, defendant McCormick was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control

with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan. he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

20.    *Defendant Cynthia H. Milligan ("Milligan")* was, at all relevant times, a director of the Company.  During the Class Period, defendant Milligan was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

21.    *Defendant Nicholas G. Moore ("Moore")* was, at all relevant times, a director of the Company.  During the Class Period, defendant Moore was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

22.    *Defendant Philip J. Quigley ("Quigley")* was, at all relevant times, a director of the Company.  During the Class Period, defendant Quigley was a fiduciary within the meaning of ERISA. because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

23. ***Defendant Donald B. Rice ("Rice")*** was, at all relevant times, a director of the Company. During the Class Period, defendant Rice was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

24. ***Defendant Judith M. Runstad ("Runstad")*** was, at all relevant times, a director of the Company. During the Class Period, defendant Runstad was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

25. ***Defendant Stephen W. Sanger ("Sanger")*** was, at all relevant times, a director of the Company. During the Class Period, defendant Sanger was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

26. ***Defendant John G. Stumpf ("Stumpf")*** was, at all relevant times, a director of the Company. Defendant Stumpf has also served as Chief Executive Officer of the Company since June 2007, and as President since August 2005. He also served as Chief Operating Officer of the Company from August 2005 to June 2007. During the Class Period, defendant Stumpf

was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

27.     ***Defendant Susan G. Swenson ("Swenson")*** was, at all relevant times, a director of the Company.   During the Class Period, defendant Swenson was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

28.     ***Defendant Michael W. Wright ("Wright")*** was, at all relevant times, a director of the Company.   During the Class Period, defendant Wright was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

29.     Defendants Chen, Dean, Engel, Hernandez, Joss, Kovacevich, McCormick, Milligan, Moore, Quigley, Rice, Runstad, Sanger, Stumpf, Swenson, and Wright are referred to herein as the "Director Defendants".

30.     ***Defendant the Retirement Committee of the Wells Fargo Financial Thrift and Profit Sharing Plan ("Retirement Committee")***.   The Retirement Committee is the investment

fiduciary of the Plan and is responsible for the appointment, monitoring and removal of investment managers and trustees for the Plan, and the establishment of guidelines for the investment funds offered under the Plan.

31.   **Defendant Peter S. DeLanoit ("DeLanoit")** is a member of the Retirement Committee. During the Class Period, defendant DeLanoit was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

32.   **Defendant Wells Fargo Financial Compensation Committee ("Compensation Committee")**. Upon information and belief, the Compensation Committee is a fiduciary of the Plan and is responsible for the appointment, monitoring and removal of investment managers and trustees for the Plan, and the establishment of guidelines for the investment funds offered under the Plan.

33.   **Defendants John Does 1-20 ("John Does 1-20")** are residents of the United States and are or were fiduciaries of the Plan during the Class Period. These defendants whose identities are currently unknown to Plaintiff, may include additional Wells Fargo employees. Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

34.   Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated (the "Class"):

> All persons who were Participants in or beneficiaries of the Plan at any time between October 3, 2008 and the present, inclusive (the

"Class Period) and whose accounts held Company stock or units in
the Wells Fargo Stock.

35.    The members of the Class are so numerous that joinder of all members is
impracticable.  While the exact number of Class members is unknown to Plaintiff at this time,
and can only be ascertained through appropriate discovery.

36.    Common questions of law and fact exist as to all members of the Class and
predominate over any questions affecting solely individual members of the Class.  Among the
questions of law and fact common to the Class are:

(a)    whether Defendants each owed a fiduciary duty to Plaintiff and members
of the Class;

(b)    whether Defendants breached their fiduciary duties to Plaintiff and
members of the Class by failing to act prudently and solely in the interests of the Plan's
Participants and beneficiaries; and

(c)    whether Defendants violated ERISA.

37.    Plaintiff's claims are typical of the claims of the members of the Class because
Plaintiff and the other members of the Class each sustained a diminution of vested benefits
arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the
Class and have retained counsel competent and experienced in class action, ERISA, and complex
civil and commercial litigation.  Plaintiff has no interests antagonistic to or in conflict with those
of the Class.

39.    Class action status in this ERISA action is warranted under Rule 23(b)(l)(B)
because prosecution of separate actions by the members or the Class would create a risk of
adjudications with respect to individual members of the Class which would, as a practical

manner, be dispositive of the interests of the other members of the Class parties to the actions, or substantially impair or impede their ability to protect their interests.

40.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecuting separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## THE PLAN

41.     The Plan is "employee pension benefit plan" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).

42.     The Plan is legal entities that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

43.     In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a defendant.  Rather, Plaintiff requests relief for the benefit of the Plan and for the benefit of its Participants.

44.     The Plan is "defined contribution plan" or "individual account" Plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts.

Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

45.     The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants which are then allocated to Participants' individual accounts.

46.     The Plan is administered by the Retirement Committee appointed by the Board of Directors of the Company.

47.     On July 1, 2002, Wells Fargo Bank, N.A. (formerly Wells Fargo Bank Minnesota, N.A.) became the trustee of the Trust and record keeper of the Plan.

48.     Effective January 1, 2004, an employee may make designated basic pre-tax contributions equal to 25 percent, in 1 percent increments, of his or her compensation. Contributions made by an employee are credited to his or her employee contribution account. The Employer makes matching basic and discretionary contributions.  The basic contribution is $1.00 for each $1.00 of employee contributions, up to 6 percent of compensation, made during the year.   The Employer may also make a discretionary contribution up to an additional $1.50 for each $1.00 of employee contributions, up to 6 percent of compensation, made during the year.   This amount is determined by the Wells Fargo Financial Compensation Committee. However, no contributions are made by the Employer for basic employee contributions made during the year by a person who is not in the employ of the Employer or an affiliated company on December 31 of that year, with the exception of those who separated from service during the year due to death, disability or retirement.  Contributions made by the Employer are credited to the respective employer contribution accounts of the participating employees.

**The Plan Fiduciaries**

49.    *Named Fiduciaries*.  ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).  The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

50.    *De Facto Fiduciaries*.  ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

51.    Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its Participants under ERISA in the manner and to the extent set forth in the governing the Plan documents, through their conduct, and under ERISA.

52.    As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan and the Plan's investments solely in the interest of the Plan's Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

53.     Plaintiff does not allege that each defendant was a fiduciary with respect to all aspects of the Plan's management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

## FACTUAL BASIS OF THE FIDUCIARY BREACHES

54.     On September 29, 2008, the Federal Deposit Insurance Corp. ("FDIC") arranged a transaction whereby Citigroup would acquire the banking operations Wachovia Corporation ("Wachovia") to sell Wachovia to Citigroup.  Under the terms of the transaction, Wachovia was to retain ownership of its securities divisions, including Wachovia Securities, AG Edwards and Evergreen.

55.     As explained in a September 29, 2008 *CNNMoney.com* article, Citigroup had agreed to acquire the banking operations of Wachovia for $2.2 billion in an all-stock deal "[a]fter deploying more than 200 individuals to pore over Wachovia's books over the weekend."

56.     On October 2, 2008, Wells Fargo offered to purchase Wachovia as an intact company and without government assistance, in a stock-for-stock merger transaction.  The offer was immediately accepted by Wachovia.  As stated in the article:

> Citi will assume about $53 billion in the Wachovia's debt and take hold of the same loan portfolio that ultimately sank Wachovia in the end.  Of the more than $300 billion in loans it absorbs, Citigroup said it would cover up to $42 billion of losses on those loans, while the Federal Deposit Insurance Corporation will be on the hook for anything beyond that.
>
> *        *        *
>
> Following a string of high-profile collapses of banks in recent weeks including WaMu and the demise of Lehman Brothers, there has been increasing speculation that Wachovia could be the next one to go.
>
> Some top federal officials, including Bair and Treasury Secretary Henry Paulson, had feared that had a deal for Wachovia not been

reached, it could have resulted in further fallout for both the economy and the already fragile financial system.

"A failure of Wachovia would have posed a systemic risk," Paulson said in a statement.

\*      \*      \*

Like many of its peers, Wachovia bet big on the U.S. mortgage market, which prompted it to suffer painful losses over the past two quarters. Some analysts have blamed the company's ill-timed 2006 acquisition of the California mortgage lender Golden West Financial Corp. for the recent company's woes.

57.    Pursuant to the agreement, each share of Wachovia common stock would be exchanged for 0.1991 shares of Wells Fargo common stock, representing a value of $7 per share, based on Wells Fargo's closing stock price on Oct. 2, 2008.

58.    On October 3, 2008, the Company issued a press release announcing that it signed a definitive agreement for the merger of the two companies including all of Wachovia's banking operations in a whole company transaction. The Company's press release stated in relevant part:

SAN FRANCISCO and CHARLOTTE, October 3, 2008 – Wells Fargo & Company (NYSE:WFC) and Wachovia Corporation (NYSE:WB) said today they have signed a definitive agreement for the merger of the two companies including all of Wachovia's banking operations in a whole company transaction requiring no financial assistance from the Federal Deposit Insurance Corporation (FDIC) or any other government agency.

Under the agreement, Wells Fargo will acquire all outstanding shares of common stock of Wachovia in a stock-for-stock transaction. In the transaction, Wells Fargo will acquire all of Wachovia Corporation and all its businesses and obligations, including its preferred equity and indebtedness, and all its banking deposits.

Under terms of the agreement, which has been approved unanimously by the boards of both companies, Wachovia shareholders will receive 0.1991 shares of Wells Fargo common stock in exchange for each share of Wachovia common stock. The transaction, based on Wells Fargo's closing stock price of $35.16 on October 2, 2008, is valued at $7.00 per Wachovia common share for a total transaction value of approximately $15.1 billion. Wachovia has almost 2.2 billion common shares outstanding. The agreement requires the approval of Wachovia shareholders and customary approvals of regulators.

Wells Fargo will record Wachovia's credit-impaired assets at fair value. The acquisition is expected to exceed Wells Fargo's internal rate of return goal and add to Wells Fargo's earnings per

share in the first year of operations, excluding integration costs, write-downs, transaction charges, and credit reserve build. Wells Fargo expects to incur merger and integration charges of approximately $10 billion. To maintain its strong capital position, Wells Fargo intends to issue up to $20 billion of new Wells Fargo securities, primarily common stock.

"We at Wachovia have great admiration and respect for the people and businesses at Wells Fargo and we are extremely pleased to join forces with this outstanding company," said Robert K. Steel, President and CEO of Wachovia Corp. *"Today's announcement creates one of the strongest financial firms in the world and is great for all Wachovia constituencies: our shareholders, customers, colleagues and communities.* This deal enables us to keep Wachovia intact and preserve the value of an integrated company, without government support. The market presence and composition of our businesses, along with our service-oriented cultures, are extraordinarily complementary and this combination creates great potential for sustained stability and growth."

(Emphasis added).

59.     Upon information and belief, the October 3, 2008 press release was a fiduciary communication because it was incorporated into the Company's Summary Plan Description ("SPD").

60.     On that same day, when the markets closed, *MSNBC.com* published an article entitled "Wachovia at the center of banking brawl" which summarized the events of the day. The news article stated in relevant part:

A battle broke out for control of Wachovia Friday as Wells Fargo signed a $15.1 billion agreement to buy the Charlotte, N.C.-based bank, while Citigroup and the federal regulators backing its earlier deal insisted that Citi's takeover bid go forward.

The surprise announcement early Friday by Wachovia Corp. that it had agreed to be acquired by San Francisco-based Wells Fargo & Co. in the all-stock deal "without government assistance" upended what had appeared to be a carefully examined arrangement and caught regulators off guard.

The Citigroup deal, announced Monday, would have been done with the help of the Federal Deposit Insurance Corp., but the Wells deal would be done without it. The head of the FDIC said the agency is standing behind the agreement it made with Citigroup Inc.

Citigroup, which demanded that Wachovia call off its deal with Wells Fargo, said its agreement with Wachovia provides that the bank will not enter into any transaction with any party other than Citi or negotiate with anyone else.

Under Wells Fargo's deal, Wachovia shareholders would receive 0.1991 shares of Wells Fargo for every share of Wachovia stock they own, valuing Wachovia at about $7 per share. This is a nearly 80 percent premium over the stock's Thursday closing price of $3.91. Shares closed at $10 last Friday, the last trading session before the deal with Citigroup was announced.

The fight for Wachovia comes in a turbulent time for banks and financial firms as they grapple with the ongoing credit crisis, which led to the recent bankruptcy of Lehman Brothers Holdings Inc. and the failure of Washington Mutual Inc.

Wachovia's board approved Wells Fargo's offer late Thursday. The deal is still subject to Wachovia shareholder and other regulatory approvals. Wells Fargo said it expects the deal to close by year-end.

"This deal enables us to keep Wachovia intact and preserve the value of an integrated company, without government support," Robert Steel, Wachovia's president and chief executive, said in a statement.

Federal Deposit Insurance Corp. Chairman Sheila Bair said Friday the agency "stands behind its previously announced agreement with Citigroup."

The FDIC will review all proposals and work with the regulators of Wachovia, Citigroup and Wells Fargo" to pursue a resolution that serves the public interest," Bair said.

Bair noted in her statement that "under either proposal, all banking customers of the merged institutions would be fully covered with no disruptions in service."

The Federal Reserve, which has regulatory oversight of the three big banks, said it hasn't had time to review the proposed sale of Wachovia to Wells Fargo but will work to ensure that all creditors and depositors of Wachovia are protected.

In a statement, the Fed said while it and the Treasury Department's Office of the Comptroller of the Currency had conducted an extensive review of the Wachovia-Citigroup deal, it had not yet had time to review the new offer from Wells Fargo.

The Fed said regulators will be working with Wachovia and Wells Fargo "to achieve an outcome that protects all Wachovia creditors, including depositors, insured and uninsured, and promotes market stability.

In connection with the agreement, Wachovia is issuing Wells Fargo preferred stock representing 39.9 percent of Wachovia's voting power. This increases the probability that the transaction gets consummated quickly and that Wells Fargo will receive a positive shareholder vote, Wells Fargo said.

Wells Fargo expects to record merger and integration charges of about $10 billion. The bank expects cost-savings of about $5 billion annually, with the majority of cost savings achievable by

the end of 2010. No government assistance is part of the deal terms.

Wells Fargo has estimated that the lifetime losses on Wachovia's loan portfolio will total $74 billion. The bank said it expects to incur the majority of credit costs over the next two years, and for the transaction to add meaningfully to earnings after that. Wells Fargo, Citigroup fight for Wachovia.

61.    The *MSNBC.com* article further reported that:

(a)    Wells Fargo's offer, pursuant to which Wachovia shareholders would receive 0.1991 shares of Wells Fargo for every share of Wachovia, valued Wachovia at about $7 per share; "a nearly 80 percent premium over the stock's Thursday closing price of $3.91."

(b)    Citigroup's offer represented a carve-out, pursuant to which Citigroup would buy only Wachovia's banking operations for $2.1 billion with the help of the FDIC. Citigroup would assume $53 billion worth of debt and absorb up to $42 billion of losses.   The FDIC agreed to cover any remaining losses in exchange for $12 billion in Citigroup preferred stock and warrants.

(c)    The price which Wells Fargo offered, a nearly 80 percent premium over Wachovia's stock price, led a professor of finance at the Tuck School of Business at Dartmouth College to state that Wells Fargo performed a "deeper and more considered due diligence has probably revealed fewer risky assets and a larger number of higher valued assets than originally thought."

62.    Significantly, Citigroup offered $2.1 billion for Wachovia's banking operations after a 200-plus person weekend due diligence marathon.  The Wells Fargo offer of $15.1 billion for Wachovia, including its Wachovia Securities, AG Edwards, and Evergreen brokerage businesses was made without this extensive due diligence; the ramifications of the inadequate due diligence were lethal.  Wells Fargo did not have a grasp on the magnitude of the problems that it was acquiring (at an inordinate premium).

63.     In fact, for several months prior to October 2, 2008, Defendants had to have been monitoring the troubled capital markets.  For example, prior to the merger, the following events roiled the world financial markets:

- On September 7, 2008, the United States Government seized control of mortgage giants Fannie Mae and Freddie Mac;

- On September 15, 2008, Lehman Brothers Holdings, Inc. collapsed and filed for bankruptcy;

- That same day, Merrill Lynch & Co. avoided the same fate by agreeing to be acquired by Bank of America;

- On September 16, 2008, the United States Government agreed to a multi-billion dollar rescue plan for American International Group, Inc. ("AIG"), which effectively wiped out the holders of AIG stock;

- On September 25, 2008, the FDIC seized the banking assets of Washington Mutual, Inc., leaving its equity shareholders with nothing; and

- That same day, the U.S. House of Representatives rejected the initial "bailout" plan proposed by the United States Department of the Treasury for the nation's financial system.

64.     On October 15, 2008, the Company issued a press release entitled "Wells Fargo Reports Net Income of $1.64 Billion, or $0.49 Per Share Wachovia Merger on Track for Q4 Close" and reported diluted earnings per common share of $0.49 in third quarter 2008 compared with $0.53 in second quarter 2008 and $0.64 in third quarter 2007.  Net income was $1.64 billion compared with $1.75 billion in second quarter 2008 and $2.17 billion in third quarter 2007.  The Company's press release further stated:

> "Despite the dramatic changes in our industry and economy, the Wells Fargo team rose to the challenge this quarter and achieved solid growth in loans and deposits, a truly remarkable accomplishment," said President and CEO John Stumpf. "Revenue year to date was up 11 percent continuing our track record of strong, double-digit growth.  Our strength, security and outstanding financial performance continued to compare favorably with our industry peers.  Our vision and values and our diversified business model are time-tested over more than two decades. We're focused, as always, on building lifelong relationships with our customers and communities, and because of that we continue to grow market share and wallet share.  *Barron*'s ranks us one of the world's 20 most admired companies.

> *"We're known and admired for our conservative financial position, and a disciplined acquisition strategy that will not change.* In that regard, we look forward with great anticipation and confidence to completing our merger with Wachovia Corporation by year end. *The union of our two companies will provide compelling value for all our stakeholders,* including Wachovia's team members, combining the industry's best in service and best in sales, an unbeatable combination that will create the nation's premier coast-to-coast financial services company." Prior to receiving this proposal, Wachovia had been negotiating with Citigroup to complete a transaction supervised by the FDIC; a transaction that included assistance from the government.

(Emphasis added).

65.     Upon information and belief, the October 15, 2008 press release was a fiduciary communication because it was incorporated into the Company's SPD.

66.     On January 20, 2009, Wells Fargo's stock dropped $4.45, or 24%, to $14.23, after Paul Miller, a veteran bank industry analyst at Friedman, Billings, Ramsey & Co. in Arlington, Va., predicted that Wells Fargo would cut its dividend by July to bolster its balance sheet.

67.     According to a January 20, 2009 article in the *Los Angeles Times* entitled "No happy new year at Wells Fargo, as its stock dives 52%." Miller "figures the bank this year will have to set aside $2.5 billion more than he had previously estimated for loan losses, in part because of continued bleeding on mortgage and other loans at Wachovia Corp." The article stated:

> That higher loan-loss provision will reduce Wells' earnings to $1.10 a share this year, Miller said, down from his previous estimate of $1.50.
>
> Miller is more pessimistic than most analysts; their median estimate for 2009 is for Wells to earn $1.70 a share. But if Miller's lower estimate is on target, Wells will earn less than its current $1.36-a-share annual dividend.
>
> What's more, he believes that Wells Chief Executive John Stumpf will want to boost the bank's so-called Tier 1 capital as a percentage of assets, now 9.5%, to strengthen Wells in a still-awful economy. Cutting the dividend would be one way to conserve capital.
>
> The company declined to respond to Miller's report, saying it doesn't comment on analysts' views.

Investors had given Wells the benefit of the doubt in 2008, even though Stumpf was taking a big risk by acquiring loss-ridden Wachovia in a deal that broke up a planned Wachovia/Citigroup marriage. Wells' shares fell just 2.3% for the year, compared with a 50% plunge in the average bank issue.

Now, some Wells shareholders must be wishing the bank had left Wachovia at Citi's altar.

68.    In fact, Wachovia's 4Q 2008 net income was a loss of $11.2B. Results included a $2.8B tax expense primarily related to deferred tax asset write-downs. Wachovia had a pre-tax loss of $10.9B, which included a credit loss provision of $7.4B of which $4.2B was a reserve build

69.    Moreover, Wachovia recorded $4.3B of market disruption-related losses including $1.7B in investment banking distribution-related losses, $1.3B of investment portfolio securities impairments, $1.1B of losses related to the liquidation of certain fund investments, and $263M in net valuation losses related to the support of money market and other funds as well as losses on auction-rate securities inventory.

70.    Further, Wachovia also included $1.0B of other losses related to trading and principal investing. Wachovia's loan portfolios took $37.2B of credit write-downs (through purchase accounting adjustments) on $93.9B of high-risk loans. Within the $93.9B of high-risk loans, $59.8B was Pick-A-Pay mortgages. Also included were $5.1B of other consumer loans ($2.8B of write-downs), $20.5B of commercial real estate loans ($7.7B of write-downs), $5.9B of other commercial loans ($1.5B of write-downs), and $2.6B of other loans ($0.9B of write-downs).

## THE LAW UNDER ERISA

71.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

72.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

73.     ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the Participants and beneficiaries, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

74.     These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

(a)     the duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plan, which invested in Wells Fargo Stock, to ensure that each investment is a suitable option for the Plan;

(b)     the duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the

Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)      a duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

75.      ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

76.      Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

## DEFENDANTS' FIDUCIARY STATUS

77.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

78.     During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section. As outlined herein, Defendants all had discretionary authority and control with respect to the management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

79.     During the Class Period, Defendants' direct and indirect communications with the Plan's Participants included statements regarding investments in Company Stock.   Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plan's Participants via the Company's website and the plan-related documents (SPD, Form S-8), which incorporated and/or reiterated these statements. Defendants also acted as fiduciaries to the extent of this activity.

80.     In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable.  To the extent any of the Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

## CAUSES OF ACTION

## COUNT I

81.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

82.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

83.     As alleged above, Defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company Stock.

84.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent.  Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendants were responsible for ensuring that all investments in Wells Fargo Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan.  Defendants are therefore liable for losses incurred as a result of such investments being imprudent.

85.     A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

86.     Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to prevent the Plan, and indirectly the Plan's Participants and beneficiaries, from suffering losses as a result of the Plan's investment in Wells Fargo Stock.

87.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

88.     Defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plan's assets with respect to offering Company Stock as an investment option in the Plan; enabling Defendants' failure to prudently manage the Plan's assets with respect to the Plan's investments; and, having knowledge of the failure to prudently manage the Plan's assets, yet not making any effort to remedy the breach.

89.     Specifically, at least some of the Defendants had actual knowledge of Wells Fargo's corporate malfeasance and questionable reporting and business.  In addition, in light of their high-ranking positions as high ranking officers at the Company, Defendants had/should have had constructive knowledge of these activities.

90.     Despite this knowledge, Defendants participated in each other's failures to prudently manage the Plan's assets and knowingly concealed such failures by not informing Participants that the Plan's holdings of Wells Fargo Stock were not being prudently managed. They also failed to remedy their mutual breaches of the duty to prudently manage the Plan's investment in Wells Fargo Stock, despite inarguably having knowledge of such breaches.

91.     Furthermore, through their own failure to prudently and loyally manage the Plan's investment in Wells Fargo Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, Defendants enabled their

co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plan's investment in Wells Fargo Stock.

92.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement. Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

93.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

94.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

95.    As alleged above, the scope of Defendants' fiduciary duties and responsibilities included disseminating the Plan documents and information to Participants regarding the Plan and assets of the Plan. In addition, Defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plan.

96.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan. This duty to inform Participants includes an obligation to provide Participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing inaccurate material information regarding the Plan's investment options such that Participants can make

informed decisions with regard to investment options available under the Plan, this duty applies to all of the Plan's investment options, including investment in Wells Fargo Stock.

97.     Defendant Wells Fargo, through its officers and directors issued a multitude of inaccurate statements through SEC filings and press releases (which were incorporated into the Company's SPD and Form S-8) regarding value of Wells Fargo Stock and the financial health of the Company.

98.     Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's inaccurate SEC filings and reports furnished by Wells Fargo, through its officers. In addition, upon information and belief, the Company communicated directly with all Participants regarding the merits of investing in Wells Fargo Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding Wells Fargo Stock as required by ERISA.

99.     In addition, Defendants were responsible for providing Participants in the Plan with investment education and communication. Defendants, however, failed to disclose any information to the Plan Participants regarding Wells Fargo's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plan. Defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plan.

100.    Defendants breached their duty to inform Participants by failing to provide complete and accurate information regarding Wells Fargo Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying

inaccurate information regarding the soundness of Wells Fargo Stock and the prudence of investing retirement contributions in the Company's stock.

101.   These failures were particularly devastating to the Plan and the Participants, as a certain percentage of the Plan's assets were invested in Wells Fargo Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

102.   In addition, Wells Fargo and the other defendants knew or should have known that information they possessed regarding the true condition of Wells Fargo would have an extreme impact on the Plan. Yet, in violation of their fiduciary duties, these Defendants failed to provide Participants with this crucial information.

103.   As a consequence of the failure of Defendants to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in Wells Fargo Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, Wells Fargo Stock was an inherently unsuitable and inappropriate investment option for their plan accounts. Had accurate information been provided, Participants could have protected themselves against losses accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by Defendants in their fiduciary communications and failures thereof.

104.   As a consequence of Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered tremendous losses. If Defendants had discharged their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary

duties alleged herein, the Plan, and indirectly Plaintiff and the other Class members, lost millions of dollars of retirement savings.

105.   Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

106.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

107.   At all relevant times, as alleged above, Wells Fargo and Director Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  At all relevant times, as alleged above, the scope of the fiduciary responsibilities of Wells Fargo and Director Defendants included the responsibility to appoint, evaluate, and monitor other fiduciaries.  The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries.

108.   The monitoring fiduciaries, Wells Fargo and Director Defendants had the duty to:

(a)   Ensure that the appointed the Plan fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, as noted above, and the behavior of the Plan's Participants;

(b)   Ensure that the appointed Plan fiduciaries are provided with adequate financial resources to do their job;

(c)   Ensure that the appointed Plan fiduciaries have adequate information to do their job of overseeing the Plan's investments;

(d)     Ensure that the appointed Plan fiduciaries have ready access to outside, impartial advisors when needed;

(e)     Ensure that the appointed Plan fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

(f)     Ensure that the appointed Plan fiduciaries report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

109.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.   In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

110.    Wells Fargo and Director Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plan fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plan's investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund which was made up primarily of Company Stock, an investment that was imprudent and inherently subject to significant downward movements,

especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

111.    Wells Fargo and Director Defendants also breached this duty by not properly disclosing information, that they knew or should have known, about the Company's improper business practices to the Trustee.  The Trustee is responsible for investing and managing assets of the Plan.  However, in doing so, the Trustee shall be subject to the direction and guidance of Wells Fargo.

112.    Wells Fargo and Director Defendants knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plan to continue offering Wells Fargo Stock as an investment alternative for the Plan, and (b) continuing to invest the assets of the Plan in Wells Fargo Stock when it no longer was prudent to do so. Despite this knowledge, Wells Fargo and Director Defendants failed to take action to protect the Plan, and concomitantly the Plan's Participants, from the consequences of these fiduciaries' failures.

113.    Wells Fargo and Director Defendants are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed Plan fiduciaries, they enabled the breaches by these defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

114.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

115.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

116.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

117.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

118.    ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

119.    Given the allegations listed above, Defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plan and its Participants and beneficiaries.  These conflicts of interest put Defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and Wells Fargo stockholders), and the interests of the Plan's Participants and beneficiaries, in whose interests Defendants were obligated to loyally serve with an "eye single."

120.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in Wells Fargo Stock; failing to notify appropriate federal agencies, including the SEC of the facts and transactions which made Wells

Fargo Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock.

121.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V

122.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

123.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

124.    As alleged herein, Wells Fargo, through its officers and employees withheld material information from the Plan's Participants and provided inaccurate disclosures, by the conduct set forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to these defendants as a matter of law.  In addition, as alleged herein on information and belief, Wells Fargo and the other defendants participated in and/or knew about the

Company's misrepresentations regarding the Company's financial condition. Thus, these defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of Wells Fargo Stock as an investment for the Participants' retirement assets.

125. Despite this knowledge, Defendants knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of Wells Fargo Stock during the Class Period. They did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in Wells Fargo Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A). In addition, these same defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in Wells Fargo Stock despite knowing such failures were breaches of fiduciary duty under ERISA. Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

126. In further violation of ERISA § 405(a)(l)(C), Defendants also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole. Instead, they compounded the problem by downplaying the significance of Wells Fargo's problems and further concealing such practices from Participants and the market as a whole.

127. In addition, Defendants enabled the imprudent asset management decisions of any and all other defendant -- including any appointed plan fiduciaries -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plan

caused by the Company's improper practices, so that these other defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in Wells Fargo Stock. In so doing, Defendants breached ERISA § 405(a)(l)(B).

128.    Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, Defendants enabled these appointed plan fiduciaries' imprudent management of the Wells Fargo Stock in the Plan.

129.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their retirement investment.

130.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

131.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

132.    To the extent that Wells Fargo is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, Wells Fargo knowingly participated in the breaches of those defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

133.    Wells Fargo benefited from the breaches by discharging its obligations to make contributions to the Plan in amounts specified by contributing Wells Fargo Stock to the Plan while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged

herein and as a result of Wells Fargo providing the market with materially inaccurate statements and omissions. Accordingly, Wells Fargo may be required to disgorge this benefit or a constructive trust should be imposed on treasury shares of Wells Fargo Stock which would have been contributed to the Plan, but for Wells Fargo's participation in the foregoing breaches of fiduciary duty.

## CAUSATION

134. Upon information and belief, the Plan suffered millions of dollars in losses in Plan benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in Wells Fargo Stock during the Class Period, in breach of Defendants' fiduciary duties. These losses to the Plan were reflected in the diminished account balances of the Plan's Participants.

135. Defendants are responsible for losses in the Plan benefits caused by the Participants' direction of investment in Wells Fargo Stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. Defendants provided inaccurate and incomplete information to the Plan Participants regarding the true health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle. As a consequence, Participants could not exercise independent control over their investments in Wells Fargo Stock, and Defendants remain liable under ERISA for losses caused by such investment.

136. Had Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in

Wells Fargo Stock, eliminating such Company Stock as an investment alternative when it became imprudent, and divesting the Plan from its holdings of Wells Fargo Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered.

137.    Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiff relied to their detriment on the misstatements and omissions that Defendants made to the Plan Participants.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

138.    Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in Wells Fargo Stock during the Class Period.  As a consequence of Defendants' breaches, the Plan suffered significant losses.

139.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary. . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

140.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the Plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable

alternative investment available.  In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been, properly administered.

141.    Plaintiff and the Class are therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

142.    Under ERISA, each defendant is jointly and severally liable for the losses suffered by the Plan in this case.

## ERISA SECTION 404(c) DEFENSE INAPPLICABLE

143.    ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions.  In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

144.    Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, Defendants did exactly the opposite.  As a consequence,

Participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in Wells Fargo Stock as a result of their investment directions, and Defendants remained entirely responsible for losses that result from such investment.

145.    Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, Plaintiff and the Class for relief stemming from Participants' decisions to invest contributions in Wells Fargo Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

146.    Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.    Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the Plan suffers a loss.  Because this is precisely what occurred in this case, Defendants are liable for the losses incurred by the Plan.

147.    Finally, Defendants remain liable for Plan losses that pertain to Wells Fargo Stock acquired by the Plan with employer contributions, as Participants did not exercise any control.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.    a declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.    a declaration that Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

C.     an Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendants had fulfilled their fiduciary obligations;

D.     imposition of a constructive trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.     An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.     An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in Wells Fargo Stock;

G.     Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts as benefits due in proportion to the accounts' diminution in value;

H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.     An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.     An Order for equitable restitution and other appropriate equitable monetary relief against Defendants

Dated:  March 3, 2009

                    **GAINEY & MCKENNA**

                    By: _Thomas J. McKenna_
                        Thomas J. McKenna
                    295 Madison Avenue, 4th Floor
                    New York, New York 10017
                    Telephone:  (212) 983-1300
                    Facsimile:  (212) 983-0380

                    *Attorneys for Plaintiff and the Putative Class*